The DEPARTMENT OF WILDLIFE CONSERVATION of the STATE OF MISSISSIPPI, Plaintiff,

v.

Robert A. JANTZEN, Director, United States Fish and Wildlife Service and Donald Hodel, Secretary, Department of the Interior of the United States of America, Defendants.

Civ. A. No. J85–0832(L).

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 30, 1985.

---

W.O. Chet Dillard, Sp. Asst. Atty. Gen., Jackson, Miss., for plaintiff.

Daniel E. Lynn, Asst. U.S. Atty., Jackson, Miss., Jean E. Williams, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause came before the court on the motion of the plaintiff, Mississippi Department of Wildlife Conservation (MDOWC), for a preliminary injunction requiring defendants, Robert A. Jantzen, Director, United States Fish and Wildlife Service, and Donald Hodel, Secretary, Department of the Interior of the United States of America, to retain January 31 as the closing date of the Mississippi duck hunting season. The parties submitted briefs and, at a hearing, presented witnesses and offered exhibits into evidence. The court is of the opinion that plaintiff's motion for preliminary injunction should be denied.

In July of 1976, the MDOWC requested approval of an experimental duck hunting season in Mississippi. In November 1979, the MDOWC and the United States Fish and Wildlife Service (FWS) entered a memorandum of agreement allowing for an extension of the 1979–80, 1980–81 and 1981–82 Mississippi duck hunting seasons from January 20, the framework closure date for other states in the Mississippi Flyway,[1] to January 31. The agreement further provided that MDOWC's final report on the experimental late hunting season, unless extended, would be due before the 1982 summer Flyway Council meeting and that the final decision regarding future late hunting seasons would be made by FWS following completion of the study and review of the final report. The experimental season extension was renewed by subsequent memorandum of agreement whereby the January 31 closure date was approved for the 1982–83, 1983–84 and 1984–85 seasons.

On March 14, 1985, Lon Strong, Executive Director of the MDOWC, wrote Dr. Rollin Sparrowe, Chief of the Migratory Bird Management Office of the FWS, to request continuation of the January 31 closure date for the 1985–86 season. He also sought to delay submission of the final report on the Mississippi experiment in order to use final harvest data to be compiled by FWS. Robert Jantzen, Director of the FWS, responded by letter dated May 9, 1985, stating that, because of the recent drought in the prairie breeding grounds and the consequent declining population of the mallard, the service would not consider extending the season. Jantzen noted that late hunting seasons present the potential for increased mallard harvest at a critical stage in their life cycle. He furthermore approved Mississippi's request to delay submission of its final report. Strong repeated his request for an extended season by letter to Jantzen dated May 29, 1985.

FWS published in 50 Fed.Reg. 23459 (June 4, 1985) its proposal to return Mississippi to the Mississippi Flyway framework. Following issuance of the 1985 Status of Waterfowl and Fall Flight Forecast and public meetings in Denver and Washington, D.C. which were attended by representatives of MDOWC, FWS published its proposed Mississippi Flyway framework dates as October 8 through January 13 and its responses to comments regarding the proposed season dates. FWS noted a state-

1. The Mississippi Flyway, one of four migratory flyways in the United States, is composed of fourteen states.

ment presented by a representative of the MDOWC and 81 other comments regarding the closure date of the Mississippi season. The FWS iterated its continued desire to review the final report to be submitted on the Mississippi experiment; because, however, of the declining status of mallards and the substantial impact of late season hunting, the FWS stated that the Mississippi season should not be extended pending receipt of the final report. On September 5, 1985, the final frameworks were published as October 5, 1985 through January 13, 1986. *See* 50 Fed.Reg. 36198 (Sept. 5, 1985).

The criteria for the issuance of a preliminary injunction are well settled in the Fifth Circuit. The moving party must demonstrate:

1. A substantial likelihood that the movant will prevail on the merits;

2. A substantial threat that the movant will suffer irreparable injury if the injunction is not granted;

3. That the threatened injury to the movant outweighs the threatened harm the injunction may do to the nonmoving party; and

4. That granting the preliminary injunction will not disserve the public interest. *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). A preliminary injunction is extraordinary relief and should only be granted upon a clear showing by the plaintiff. *Id.*

**2.** Counsel for plaintiff stated in closing argument that the Administrative Procedure Act is not applicable to the instant case, citing *Humane Society v. Watt*, 551 F.Supp. 1310, 1318 n. 2 (D.C.D.C.1982), *aff'd*, 713 F.2d 865 (1983), wherein the court rejected the argument of National Wildlife Federation that

the court should apply strict scrutiny tests to determine whether defendants' actions here have a rational basis in the record. It argues that the intensity of the scrutiny a court should give to agency action depends upon several factors, including whether the action represents a major change in public policy, whether the action appears on its face to be contrary to congressional intent, whether there has been an evidentiary hearing below, and whether all relevant factors have been considered.

■ The scope of this court's review of the FWS decision is governed by 5 U.S.C. § 706[2] which provides in part:

The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

*See Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). Only questions of fact are subject to the "arbitrary and capricious" standard; "questions of law ... are freely reviewable by the courts." *Coca Cola Co. v. Atchison, Top. & S.F.Ry. Co.*, 608 F.2d 213, 218 (5th Cir.1979); *See Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 904 (5th Cir.1983). Review is further limited to the administrative record made in the proceedings before the FWS.[3]

■ Plaintiff first charges that the decision of FWS to restrict Mississippi to the flyway closure date was arbitrary and capricious and not in accordance with law. 16 U.S.C. § 704, which provides the statutory authority for creation of hunting seasons by FWS, states:

Subject to the provisions and in order to carry out the purposes of the conventions, referred to in section 703 of this title, the Secretary of the Interior is authorized and directed, from time to time,

Even if plaintiff had established, as it contended in argument, that defendants failed to consider all of the elements set out in 16 U.S.C. § 704, a review of the facts of this case makes it clear that plaintiff has not demonstrated the necessity of a stricter standard.

**3.** Counsel for defendants informed the court that the administrative record has not yet been compiled and is, accordingly, not available for the court to review in its determination of whether a preliminary injunction should be issued. Counsel for defendants furthermore represented that the evidence before the court comprises a sufficient portion of the administrative record from which the court can determine whether the FWS decision is arbitrary and capricious. Plaintiff contends that the administrative record is not necessary pursuant to its argument which this court rejects in footnote 2.

having due regard to the zones of temperature and to the distribution, abundance, economic value, breeding habits, and times and lines of migratory flight of such birds, to determine when, to what extent, if at all, and by what means, it is compatible with the terms of the conventions to allow hunting, taking, capture, killing, possession, sale, purchase, shipment, transportation, carriage, or export of any such bird, or any part, nest, or egg thereof, and to adopt suitable regulations permitting and governing the same, in accordance with such determinations, which regulations shall become effective when approved by the President.

Defendants' decision was based on the declining status of mallards and the substantial impact caused by late hunting seasons. Ken Gambell, wildlife biologist for FWS, acknowledged that the correlation between hunting and duck mortality is only suggestive and not conclusive. He further testified that the present status of mallards is unprecedented and FWS decided that a conservative approach was necessary to prevent further decline.[4] The fact that FWS has allowed other states in the Mississippi Flyway to extend the framework season cannot be interpreted as discrimination against Mississippi. The extensions allowed to other states are all limited to the beginning of the seasons and have little impact on mallard population.[5] Plaintiff's claims that defendants' decision is not in accordance with law for its failure to consider specifically all the factors set out in 16 U.S.C. § 704 must also fail. The evidence did not establish that defendants did not consider all the factors. Furthermore, the unprecedented declining mallard population clearly justified the limitations on hunting seasons, regardless of the effect of consideration of other factors.

██ Plaintiff next argues that defendants breached their agreement. All witnesses, including those of the plaintiff, testified that no agreement is currently in effect. Plaintiff apparently contends that FWS had some obligation to continue the extension pending submission of the final report on the experiment. Such an obligation is clearly not embodied in either of the agreements and plaintiff failed to establish the existence of any practice of FWS that would imply such a duty.[6]

██ Plaintiff finally argues that, in the rulemaking process, defendants denied plaintiff a fair hearing and failed to use information and facts compiled by plaintiff in establishing the 1985–86 frame work. Plaintiff and its representatives participated in all aspects of the process. In the Federal Register, defendants responded to comments made by plaintiff and others challenging the return of Mississippi to the framework closure dates. The final report of the Mississippi experiment was not considered because it has not been submitted, although the testimony did not establish that FWS failed to consider preliminary data from the study or any other information submitted by the plaintiff during the comment period. In any event, the study agreements only obligated FWS to review the final report before making a final decision, which FWS has not yet made.

Accordingly, this court is of the opinion that plaintiff has not established a substantial likelihood of success on the merits of its claims.

---

4. Billy Joe Cross, a representative of Ducks Unlimited, a conservation organization, challenged the accuracy of FWS' numbers but stated that, were the numbers accurate, he would disallow duck hunting seasons altogether.

5. Iowa was allowed to use a small part of its season in September rather than during the regular framework. The experience has been that the mallard harvest decreased as a result of allowing this pre-framework extension. Kentucky and Tennessee were also allowed extensions at the beginning of the framework season which were limited to teal and wood duck hunt-ing. The western portion of Louisiana has been experimentally placed in the Central Flyway rather than the Mississippi Flyway and allowed to utilize the framework dates for the Central Flyway.

6. The information upon which plaintiff is waiting to complete its study has not been released yet by FWS. The delay, however, cannot be blamed on FWS since such information is generally not available at this time and plaintiff, in May 1985, requested a delay so that this particular information could be used.

Plaintiff further fails to show that the harm it will suffer absent issuance of the injunction outweighs any harm threatened to the defendant if the motion is granted. Plaintiff argues that, without the injunction, the state will suffer economically from a loss of revenue created by sales of duck hunting licenses and other duck hunting accoutrements.[7] Duck hunters will be irreparably injured, according to the plaintiff, by the loss of companionship and comradery experienced in the blinds. These alleged losses, while certainly serious to one experiencing them, cannot compare with the threatened danger to defendants, and the general public, of the risk of loss of the mallard duck.

It is, therefore, ordered that plaintiff's motion for preliminary injunction is denied.

---

**7.** A witness for the plaintiff, an avid duck hunter, testified that the sport requires the leasing of land and purchase of shells, guns, licenses and a four-wheel drive vehicle.